1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                                    EASTERN DISTRICT OF CALIFORNIA

10

11   H.F.,[1]

12                   Petitioner,                        No. 1:25-cv-01795-TLN-EFB

13

14            v.                                        **ORDER**

15   SERGIO ALBARRAN, Acting Director,
     San Francisco Field Office, U.S.
16   Immigration and Customs Enforcement, et
     al.,[2]

17                   Respondents.

18

19          This matter is before the Court on Petitioner H.F.'s ("Petitioner") Amended Motion for a

20   Temporary Restraining Order ("TRO") and Preliminary Injunction.  (ECF No. 2.)[3]  Respondents

21   _____

     [1]     Petitioner concurrently filed a Motion to Proceed Under Pseudonym.  (ECF No. 4.)
22   Respondents do not oppose.  (ECF No. 10 at 8.)  For good cause shown, Petitioner's motion is
     GRANTED (ECF No. 4), and Petitioner shall proceed under the pseudonym, H.F.
23
     [2]     Respondents ask the Court, via footnote, to dismiss all respondents other than the facility
24   administrator.  (ECF No. 10 at 1 n.1.)  The request as made is improper.  If Respondents seek to
     dismiss any respondents from this action, they must do so in a properly noticed motion.  *See*
25   *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025)
     ("[A] request for court order must be made by motion.  As a result, a request for affirmative relief
26   is not proper when raised for the first time in an opposition.").

27   [3]     A second Motion for Temporary Restraining Order and Preliminary Injunction appears on
28   the docket at (ECF No. 3).  As the filings appear identical, the Court understands them to be the

                                                    1

Sergio Albarran, Todd Lyons, Kristi Noem, Pam Bondi, and Minga Wofford (collectively, "Respondents") filed an opposition.  (ECF No. 10.)  Petitioner filed a reply.  (ECF No. 11.)  For the reasons set forth below, Petitioner's motion is GRANTED and the Court issues a preliminary injunction as set forth below.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a citizen and national of Iran who entered the United States with his spouse and child on December 25, 2021.  (ECF No. 2 at 8.)  Shortly thereafter, they were apprehended by U.S. Immigration and Customs Enforcement ("ICE"), taken into immigration custody, and briefly detained.  (*Id.*)  The following day, Petitioner was released on his own recognizance pursuant to 8 U.S.C. § 1226.  (*Id.*)  Petitioner was provided a Notice to Appear for removal proceedings under 8 U.S.C. § 1229a.  (*Id.*)

Petitioner states that shortly after entering the United States, he and his spouse began experiencing marital discord.  (*Id.*)  Petitioner was arrested in August 2022 following accusations against him made by his spouse which Petitioner claims are false.  (*Id.*)  Petitioner has maintained his innocence throughout his criminal proceedings.  (*Id.*)  Three years later, Petitioner pleaded no contest in California Superior Court to two counts of nonviolently dissuading a witness under California Penal Code § 136.1(b)(2).[4]  (*Id.* at 8–9.)  The District Attorney dismissed all other charges.  (*Id.* at 9.)  On October 27, 2025, Petitioner was sentenced to 120 days of imprisonment in county jail and a total of three years on probation.  (*Id.*)  Petitioner was released from custody that same day based on time served.  (*Id.*)

Upon his release, Petitioner was immediately detained by ICE at the courthouse.  (*Id.*)  He was transferred to the Mesa Verde ICE Processing Facility.  (*Id.*)  Petitioner is being detained without an opportunity to post bond or be released on other conditions, including release on his prior order of release on recognizance.  (*Id.*)

Petitioner filed a petition for writ of habeas corpus and the instant motion for a TRO and same motion.  (ECF Nos. 2, 3.)

---

[4]    The second count was reduced to a misdemeanor under California Penal Code § 16b on November 12, 2025.  (ECF No. 2 at 9.)

1   preliminary injunction on December 10, 2025.  (ECF Nos. 1–3.)

2   **II.    STANDARD OF LAW**

3   A TRO and preliminary injunction are both extraordinary remedies.  In general,

4   "[t]emporary restraining orders are governed by the same standard applicable to preliminary

5   injunctions."  *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1

6   (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* E.D. Cal. L.R. 231(a).

7   For a TRO or preliminary injunction to issue, Petitioner must establish: "[1] that he is

8   likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

9   preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in

10  the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner

11  must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v.*

12  *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  However, the Court may weigh Petitioner's

13  showing on each of the *Winter* factors using a sliding-scale approach.  *Id.*  A stronger showing on

14  the balance of the hardships may support issuing a TRO or preliminary injunction even where

15  there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a

16  likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, if

17  "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ]

18  sharply" in Petitioner's favor in order to obtain preliminary relief.  *Id.* at 1134–35.

19  **III.    ANALYSIS**

20  The Court considers each of the *Winter* elements with respect to Petitioner's motion.

21  A.    Likelihood of Success on the Merits

22  Petitioner argues he is likely to succeed on the merits of his habeas petition because his

23  detention and arrest violate the Immigration and Nationality Act ("INA") and due process.[5]  (ECF

24  No. 2 at 10–19.)  The Court addresses each argument in turn.

25  ///

26  ---

27  [5]    Because the Court finds Petitioner's statutory and due process rights were likely violated, it need not address the parties' arguments as to whether Petitioner is a member of the class certified in *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

28

1          *i.        Statutory Claim*

2          The Court begins with the central dispute in this case: whether Petitioner's immigration

3   detention is governed by 8 U.S.C. § 1225(b)(2) ("§ 1225(b)(2)") or 8 U.S.C. § 1226(a)

4   ("§ 1226(a)").  The issue turns on whether Petitioner is an applicant "seeking admission."

5   Section 1225(b)(2) mandates detention during removal proceedings for applicants "seeking

6   admission" and does not provide for a bond hearing.  8 U.S.C. § 1225(b)(2).  Section 1226(a)

7   "provides the general process for arresting and detaining [noncitizens] who are present in the

8   United States and eligible for removal."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th

9   Cir. 2022).  Under § 1226(a), the Government has broad discretion in deciding whether to release

10  or detain the individual.  *Id.*  Section 1226(a) also provides several layers of review for an initial

11  custody determination.  *Id.*  The statute confers "an initial bond hearing before a neutral

12  decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to

13  appeal, and the right to seek a new hearing when circumstances materially change."  *Id.* at 1202.

14  Until the Department of Homeland Security ("DHS") changed its policy in July of 2025, the

15  Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the

16  United States who were detained by immigration authorities and subject to removal.  *See id.* at

17  1196.

18          Here, Petitioner contends he was unlawfully deemed ineligible for bond based on the

19  erroneous finding that he is subject to mandatory detention under § 1225(b)(2).  (ECF No. 2 at

20  10–12.)  Instead, Petitioner argues that his detention must be governed by § 1226(a).  (*Id.*)  In

21  opposition, Respondents argue § 1225(b)(2) applies to all "applicants for admission," not only

22  those "seeking admission."  (ECF No. 10 at 14–21.)  Respondents claim Petitioner is an applicant

23  for admission solely because he is present in the United States without having been admitted.  (*Id.*

24  at 16.)  Respondents do not otherwise discuss the specific facts of Petitioner's case.  Instead, their

25  argument on the applicability of § 1225(b)(2) relies on general statutory interpretation and DHS's

26  change in policy.  (*Id.* at 14–21.)

27          As this Court has previously noted, substantial ink has been spilled on this issue.

28  *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal.

4

1    Dec. 11, 2025).  District courts nationwide, including this Court, have overwhelmingly rejected

2    Respondents' arguments and found DHS's new policy unlawful.  *See e.g.*, *Hortua v. Chestnut, et*

3    *al.*, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916, at *3–4 (E.D. Cal. Dec. 9, 2025); *Barco*

4    *Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26,

5    2025) (estimating over 350 cases ruled DHS's July policy improper across 160 different judges

6    sitting in about 50 different courts nationwide); *Bautista Pico, et al. v. Noem, et al.*, No. 25-CV-

7    08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases); *Estrada-*

8    *Samayoa v. Cruz, et al.*, No. 1:25-CV-01565-EFB, 2025 WL 3268280, at *4 (E.D. Cal. Nov. 24,

9    2025) (collecting cases).

10    "These courts examined the text, structure, agency application, and legislative history of

11    [§] 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category

12    that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo*

13    *Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025)

14    (collecting cases).  In comparison, "[t]he government's proposed reading of the statute[:] (1)

15    disregards the plain meaning of [§] 1225(b)(2)(A); (2) disregards the relationship between [§§]

16    1225 and 1226; (3) would render a recent amendment to [§] 1226(c) superfluous; and (4) is

17    inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No.

18    1:25-CV-01163-KES-SKO, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting

19    cases).  This Court agrees with these well-reasoned and compelling decisions and finds no reason

20    to reconsider its prior rulings.

21    Despite the overwhelming case law contrary to their position, Respondents urge this Court

22    to follow the few opinions siding in the Government's favor.  (ECF No. 10 at 17, 21 (citing *Doe*

23    *v. Andrews*, No. 1:25-CV-00333-JLT-HBK, 2025 WL 3280777 (E.D. Cal. Nov. 25, 2025);

24    *Alonzo v. Noem*, No. 1:25-CV-01519 WBS SCR, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025);

25    *Ramos v. Lyons*, No. 2:25-CV-09785-SVW-AJR, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025);

26    and *Pena v. Hyde*, No. CV 25-11983-NMG, 2025 WL 2108913 (D. Mass. July 28, 2025)).  The

27    Court is not persuaded.  *Doe* is inapplicable because the petitioner in that case was found to be

28    subject to mandatory detention under a different section of the INA, 8 U.S.C. § 1225(b)(1)(B)(ii).

5

1    2025 WL 3280777, at *4.  The statutory interpretation arguments Respondents rely on from

2    *Alonzo* and *Ramos* have been consistently rejected by courts in the Ninth Circuit.  *See*, *Salcedo*

3    *Aceros*, 2025 WL 2637503, at *8 (collecting cases).  *Alonzo* and *Ramos* are also factually

4    distinguishable because in both cases, the petitioner had never been encountered, let alone been

5    processed, by immigration officials, and had not been released on their own recognizance.

6    *Alonzo*, 2025 WL 3208284, at *1; *Ramos*, 2025 WL 3199872, at *1; *see also Aguilera v.*

7    *Albarran, et al.*, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016, at *9 (E.D. Cal. Dec. 4,

8    2025) (discussing the distinction).  Finally, the Court declines to follow *Pena*, as there the court

9    did not discuss § 1226(a) and thus failed to consider the implications of its incompatibility with

10   § 1225(b)(2).  2025 WL 2108913, at *1–2.

11          For these reasons, the Court finds Petitioner is not an applicant "seeking admission"

12   subject to mandatory detention under § 1225(b)(2).  Petitioner is subject to § 1226(a) and he is

13   therefore entitled to the process that statute requires, including a bond hearing at minimum.  Thus,

14   Petitioner is likely to succeed on the merits of his claim that his arrest and re-detention violate the

15   INA.

16                          *ii.*          *Due Process Claim*

17          Petitioner also argues his re-detention without a bond hearing infringes upon his liberty in

18   violation of due process.  (ECF No. 2 at 12–19.)  In opposition, Respondents argue Petitioner is

19   only entitled to the process that Congress grants by statute and because § 1225(b)(2) mandates

20   detention, Petitioner is not entitled to a bond hearing.  (ECF No. 10 at 21–23.)  Respondents also

21   argue that even if Petitioner shows he is entitled to preliminary relief, that relief should be the

22   provision of a bond hearing, not immediate release.  (*Id.* at 23–26.)  In reply, Petitioner maintains

23   immediate release is the appropriate remedy.  (ECF No. 11 at 4–5.)

24          The Fifth Amendment Due Process Clause prohibits government deprivation of an

25   individual's life, liberty, or property without due process of law.  *Hernandez v. Session*, 872 F.3d

26   976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of

27   the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)

28   ("[T]he Due Process Clause applies to all 'persons' within the United States, including

                                          6

1    noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").  These

2    due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at

3    693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

4         Courts examine procedural due process claims in two steps: the first asks whether there

5    exists a protected liberty interest under the Due Process Clause, and the second examines the

6    procedures necessary to ensure any deprivation of that protected liberty interest accords with the

7    Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

8    *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

9    the question remains what process is due.").

10                                    *a)  Liberty Interest*

11        "Freedom from imprisonment — from government custody, detention, or other forms of

12   physical restrain — lies at the heart of the liberty that [the Due Process] Clause protects."

13   *Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or

14   over whose liberty the government wields significant discretion retain a protected interest in their

15   liberty."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).  "Although in

16   some circumstances the initial decision to detain or release an individual may be within the

17   government's discretion, the government's decision to release an individual from custody creates

18   'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only

19   if [they] fail[ ] to live up to the . . . conditions [of release]."  *Id.* (quoting *Morrissey*, 408 U.S. at

20   482) (modifications in original).  "Accordingly, a noncitizen release from custody pending

21   immigration proceedings has a protected liberty interest in remaining out of custody."  *Salcedo*

22   *Aceros*, 2025 WL 2637503, at *6.  To determine whether an individual's conditional release rises

23   to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release

24   in the case before them with the liberty interest in parole as characterized by *Morrissey*."

25   *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9,

26   2025).

27        Here, the Court agrees with Petitioner's argument that he has developed "enduring

28   attachments of normal life" as described in *Morrissey*, 408 U.S. at 482.  (ECF No. 2 at 14.)

1   Petitioner's liberty interest is particularly acute here because he was detained by ICE immediately

2   upon release from criminal detention where he served three years of pre-trial detention for

3   allegations that warranted a sentence of no more than 120 days in county jail.  (ECF No. 3-1 ¶ 4.)

4   These facts are aligned with *Morrissey*, which concerned the liberty of a parolee.  408 U.S. at

5   481–82.  Like the parolee in *Morrissey*, Petitioner's liberty would "enable[ ] him to do a wide

6   range of things open to persons who have never been convicted of any crime."  *Id.* at 482.  These

7   include the opportunity to "be gainfully employed and [ ] free to be with family and friends[.]"

8   *Id.*  Petitioner has expressed his desire to reconnect with his community and rebuild his life in the

9   United States.  (ECF No. 3-1 ¶ 4.)  The Government does not address — let alone dispute —

10  Petitioner's liberty interest.  (*See generally* ECF No. 10.)

11       For these reasons, Petitioner has a liberty interest protected by the Due Process Clause in

12  his release from immigration detention.

13                            *b)  Procedural Due Process*

14       Having found a protected liberty interest, the Court examines what process is necessary to

15  ensure any deprivation of that protected liberty interest accords with the Constitution.  The Court

16  considers three factors: (1) "the private interest that will be affected by the official action;" (2)

17  "the risk of an erroneous deprivation of such interest through the procedures used, and the

18  probable value, if any, of additional or substitute procedural safeguards;" and (3) "the

19  Government's interest, including the function involved and the fiscal and administrative burdens

20  that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424

21  U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the

22  government's countervailing interests in immigration enforcement."  *Rodriguez Diaz*, 53 F.4th at

23  1206.

24       Petitioner argues the *Mathews* factors weigh in his favor and provision of a pre-

25  deprivation hearing is both possible and valuable to preventing an erroneous deprivation of

26  liberty.  (ECF No. 2 at 15–19.)  Respondents argue the *Mathews* factors do not warrant a bond

27  hearing because Petitioner is subject to mandatory detention and the Government has a strong

28

8

1    interest in detaining noncitizens prior to removal.[6]  (ECF No. 7 at 15–17.)

2    As to the first *Mathews* factor — Petitioner's private interest — as discussed above,

3    Petitioner was detained by ICE immediately upon release from criminal detention.  (ECF No. 3-1

4    ¶ 4.)  As an individual released after serving his criminal sentence, Petitioner has a profound

5    interest in his return to liberty.  *See Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982)

6    (concluding that re-incarcerating a parolee released from custody would be "inconsistent with

7    fundamental principles of liberty and justice.").

8    As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds

9    the risk here to be considerable.  The risk of an erroneous deprivation of Petitioner's liberty

10   interest is high where he has received virtually no procedural safeguards such as a bond or

11   custody redetermination hearing.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL

12   1424382, at *5 (E.D. Cal. May 16, 2025).  This is particularly so as Petitioner has already been

13   released from incarceration twice: first from immigration detention on his own recognizance, and

14   second from criminal detention for time-served.  *See R.D.T.M.*, 2025 WL 2686866 at *6 ("Civil

15   immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a

16   noncitizen presents a risk of flight or danger to the community.")  The risk of erroneous

17   deprivation of Petitioner's liberty is therefore high.

18   As to the third *Mathews* factor — the Government's interest — any interest in detaining

19   Petitioner without a hearing before a neutral decisionmaker is low.  *R.D.T.M.*, 2025 WL 2686866

20   at *6.  Custody hearings in immigration court are "routine and impose a 'minimal' cost," and

21   indeed, § 1226(a) provides for such protections.  *Id.* (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083,

22   1094 (E.D. Cal. 2025); *Pinchi*, 2025 WL 1853763, at *2).

23   Respondents counter they have a strong interest in prompt execution of removal orders

24   and cites case law for the proposition that a noncitizen's flight may impede removal.  (ECF No.

---

[6]    At the outset, Respondents argue that the Court should not apply the *Mathews* test at all
because due process in the immigration context is limited to the processes provided by statute.
(ECF No. 10 at 21–22.)  However, the Ninth Circuit applies the *Mathews* test when assessing
immigration due process challenges.  *See Rodriguez Diaz*, 53 F.4th at 1206.  The Ninth Circuit
instructs that the *Mathews* test is flexible and can account for the heightened governmental
interest in the immigration detention context.  *Id.*

1   10 at 23.)  However, a hearing does not guarantee a noncitizen be released, it merely provides

2   minimal procedural safeguards to ensure the noncitizen's detention is proper.

3          For these reasons, the Court finds Respondents' interest in placing Petitioner in detention

4   without a hearing is low and does not outweigh Petitioner's substantial liberty interest or the risk

5   of erroneous deprivation of liberty.  Due process thus requires that Petitioner receive a hearing

6   before a neutral decisionmaker that complies with § 1226(a) and related laws and regulations if he

7   is to be re-detained.

8          Having found Petitioner has a protected liberty interest and determined that due process

9   requires Petitioner receive a hearing before a neutral decisionmaker prior to re-detention, the

10  Court finds Petitioner has established a likelihood of success on the merits.

11                 B.     Irreparable Harm

12         As the Ninth Circuit has recognized, "[i]t is well established that the deprivation of

13  constitutional rights 'unquestionably constitutes irreparable injury.'"  *Hernandez*, 872 F.3d at 994

14  (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  "When an alleged

15  deprivation of a constitutional right is involved, most courts hold that no further showing of

16  irreparable injury is necessary."  *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005);

17  *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty

18  by detention constitutes irreparable harm.").  In addition to harms imposed by continued

19  immigration detention, Petitioner has shown he is likely to succeed on the merits of his claims.

20  Thus, the Court finds Petitioner has demonstrated irreparable harm.

21                 C.     Balance of Equities and Public Interest

22         As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the

23  balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F.

24  Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092

25  (9th Cir. 2014)).  Respondents "cannot reasonably assert that [they are] harmed in any legally

26  cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. I.N.S.*, 753

27  F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir.

28  2013) ("[The Government] cannot suffer harm from an injunction that merely ends an unlawful

                                          10

1    practice[.]").  Moreover, the public has a strong interest in ensuring its government follows the

2    law and the Ninth Circuit has recognized that the "costs to the public of immigration detention are

3    staggering[.]"  *Hernandez*, 872 F.3d at 996; *see also Index Newspapers LLC v. U.S. Marshals*

4    *Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the

5    violation of a party's constitutional rights.")

6            As discussed above, Petitioner is likely to succeed in proving that Respondents have

7    violated federal law and deprived him of his constitutional rights and liberty.  Additionally,

8    Respondents are not harmed by their sworn duty to follow the law.  *See Zepeda*, 753 F.2d at 727.

9    Thus, the balance of equities and public interest factors weigh in Petitioner's favor.

10           Having found that Petitioner has satisfied each of the *Winter* factors, this Court finds

11   release is warranted to return Petitioner to the status quo before Respondents' unlawful acts.  *See*

12   *Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20,

13   2025) (status quo *ante litem* is "the last uncontested status which preceded the pending

14   controversy.") (quoting *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir.

15   2000)).

16           **IV.    CONCLUSION**

17           Therefore, the Court GRANTS Petitioner's motion and issues the preliminary injunction

18   set forth below.  IT IS HEREBY ORDERED that:

19           1.      Petitioner's Motion for a TRO and a Preliminary Injunction (ECF No. 2) is

20   GRANTED;

21           2.      Petitioner's Motion to Proceed via Pseudonym (ECF No. 4) is GRANTED;

22           3.      Respondents shall IMMEDIATELY RELEASE Petitioner from custody under the

23   same conditions as he was released prior to his October 27, 2025, detention.  Respondents shall

24   not impose any additional restrictions on him, unless such restrictions are determined to be

25   necessary at a future pre-deprivation/custody hearing;

26           4.      Respondents are ENJOINED AND RESTRAINED from re-arresting or re-

27   detaining Petitioner absent compliance with constitutional protections, including notice and a

28   hearing before a neutral fact-finder where Respondents show (a) there are material changed

circumstances which demonstrate there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) clear and convincing evidence shows that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have his counsel present;

5.     The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).  Courts regularly waive security in cases like this one. *See*, *e.g.*, *Zakzouk v. Becerra*, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025);

6.     This preliminary injunction shall remain in force throughout the pendency of this action unless modified by the Court; and

7.     This matter is referred to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: December 19, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE