UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.F.,<br><br>Petitioner,<br><br>v.<br><br>SERGIO ALBARRAN, Acting Director, San Francisco Field Office, U.S. Immigration and Customs Enforcement, et al.,<br><br>Respondents. | No. 1:25-cv-01795-TLN-EFB<br><br>**ORDER** |

This matter is before the Court on Petitioner H.F.'s ("Petitioner") Motion to Enforce Judgment and related Motion for Temporary Restraining Order ("TRO"). (ECF Nos. 23, 24.) Petitioner seeks to enforce this Court's December 19, 2025 order enjoining and restraining Respondents from re-arresting or re-detaining him without a constitutionally compliant pre-deprivation hearing. (ECF No. 23 at 6–7.) The matters are fully briefed. (ECF Nos. 28, 29.) For the reasons set forth below, Petitioner's Motion to Enforce Judgment is GRANTED and Respondents are ordered to provide Petitioner a constitutionally compliant due process hearing as set forth below. (ECF No. 23.) Petitioner's Motion for TRO is DENIED as moot. (ECF No. 24.)

///

///

## I. Factual and Procedural Background

### A. Petitioner's Habeas Proceedings and Re-Detention

Petitioner is a noncitizen who filed a Petition for Writ of Habeas Corpus challenging his civil immigration detention as violating the Constitution and federal law. (ECF No. 1.) Petitioner filed a Motion for TRO and Preliminary Injunction concurrently with his habeas petition. (ECF No. 2.) On December 19, 2025, the Court granted Petitioner's motion for TRO and ordered his immediate release to preserve the status quo. (ECF No. 12.) The Court also ordered:

> Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and a hearing before a neutral factfinder where Respondents show (a) there are material changed circumstances which demonstrate there is a significant likelihood of petitioner's removal in the reasonably foreseeable future, or (b) clear and convincing evidence shows that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have his counsel present[.]

(*Id.* at 11–12.) The matter was referred to the assigned magistrate judge for further proceedings. (*Id.* at 12.) Petitioner was released from custody on December 20, 2025. (ECF No. 24 at 4.) On February 23, 2026, the magistrate judge issued findings and recommendations recommending that the habeas petition be granted and Respondents be enjoined and restrained under the same terms set forth in the Court's prior order. (ECF No. 18.) On March 11, 2026, the Court adopted the findings and recommendations in full and entered judgment in favor of Petitioner. (ECF No. 21.)

Separately, on January 15, 2026, while Petitioner's habeas petition was still pending, Respondents filed a motion to set a pre-deprivation hearing.[1] (ECF No. 24 at 5.) An immigration judge ("IJ") held a hearing on February 18 and 25, 2026. (*Id.*) On March 13, 2026, the IJ issued a written decision finding Petitioner poses a danger to the community and may be re-detained. (ECF No. 23-1 at 8.) Petitioner filed the instant Motion to Enforce Judgment on March 19, 2026. (ECF No. 23.) Petitioner filed the instant Motion for TRO on March 24, 2026. (ECF No. 24.) He was re-detained that same day. (ECF No. 28 at 5.) On July 16, 2026, Petitioner informed the Court that his application for asylum and withholding of removal was granted. (ECF No. 30.)

---

[1] The motion to set a pre-deprivation hearing was made to the immigration court, not this Court. (*See* ECF No. 23-1 at 11–12.)

B. The Pre-Deprivation Hearing

The pre-deprivation hearing occurred on February 18 and 25, 2026. (ECF No. 24 at 5.) The February 18, 2026 session concerned the propriety of various witnesses and evidence. (ECF No. 23-1 at 11–25.) Petitioner sought to call his former public defender as a witness to testify to the posture of his criminal case and plea bargain. (*Id.* at 18–23.) Petitioner also sought to call another public defender who claimed to have overheard his ex-wife coaching their daughter in the bathroom. (*Id.*) The IJ declined to allow either public defender to testify. (*Id.* at 23.)

At the February 25, 2026 session, the government argued Petitioner was a danger and a flight risk based on the factors outlined in the Board of Immigration Appeals ("BIA") decision in *Matter of R-A-V-P-*.[2] (*Id.* at 75–77.) The government focused on Petitioner's criminal history, specifically the domestic abuse allegations for which he was initially arrested but not convicted. (*Id.* at 76.) While acknowledging the dissuading a witness offense Petitioner pleaded guilty to did not rise to the level of an aggravated felony, the government argued the underlying facts would still support a finding that it was a serious crime that will bar asylum relief. (*Id.*)

Petitioner's counsel argued the government had not met its burden to show by clear and convincing evidence that he is a flight risk or danger to the community. (*Id.* at 77.) Counsel argued Petitioner's dissuading a witness conviction did not justify immigration detention. (*Id.*) Counsel also pointed out that the government's evidence came from one source, Petitioner's ex-wife, without independent corroboration. (*Id.*) Petitioner disputes everything his ex-wife says. (*Id.*) Counsel also highlighted the character witnesses who testified that they would support and help Petitioner rebuild his life. (*Id.*)

The IJ heard testimony from Petitioner's ex-wife, his sponsor, and an individual who offered him a job. (*Id.* 30–74.) The parties submitted documents related to Petitioner's criminal and immigration cases as well as declarations from the public defenders who were not permitted to testify. (*Id.* at 11–12, 188–194). The IJ concluded the hearing by stating a written decision would be issued. (*Id.* at 79.)

---

[2] These are the same factors as those in *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006), discussed below.

C. The Immigration Judge's Order

The IJ's March 13, 2026 order begins by identifying the issue before the immigration court as "whether ICE can re-detain [Petitioner]." (ECF No. 23-1 at 4.) The IJ then summarizes Petitioner's immigration and criminal history as well as this Court's preliminary injunction. (*Id.* at 4–5.) Next, the IJ discusses the nine factors set forth in *Guerra*, 24 I&N Dec. at 40.[3] (*Id.* at 5–7.) With respect to the sixth factor — criminal record — the IJ writes:

> [Petitioner] has been accused of some very serious offenses, the subject of which has been passionately argued by both attorneys. What is beyond dispute is that [Petitioner] was convicted of two counts of dissuading a witness under California Penal Code § 136.1(b)(2); sentenced to 120 days of imprisonment, three years of probation, restitution, and 10 year protection orders against both victims. [Petitioner's] counsel challenges [Petitioner's] commission of the underlying facts needed to support such a conviction, arguing that the DA's office only offered the plea bargain because the case was weak, and that [Petitioner] only accepted the plea bargain to bring finality to the matter. Beyond the fact that [Petitioner] did not testify about whether he did or did not dissuade a witness on two occasions, counsel's contention is not persuasive as there are many reasons cases are ultimately resolved with a guilty plea to reduced charges. Certainly, the strength of a case/likelihood of conviction can be a significant factor. However, there are numerous other considerations unrelated to the strength of the case which are also frequently considered. This [IJ] disagrees with counsel's suggestion that the DA's office only offered a plea deal because they believed the case was too weak to pursue. Moreover, it is well settled in immigration proceedings that, "in ascertaining the effect of a criminal conviction, neither the Board nor the Immigration Judge may go beyond the judicial record to determine the guilt or innocence of a[ ] [noncitizen]." Matter of Mendez, 21 I&N Dec. 296, 304 (BIA 1996). An individual convicted of a crime "must be considered guilty of the crime." Id. [Petitioner] was convicted of two counts of dissuading a witness, and has presented no evidence to dispute his commission of those crimes. Accordingly, the [IJ] finds that [Petitioner], on two occasions, committed the crime of dissuading a witness.

(*Id.* at 6–7.) Following review of the *Guerra* factors, the IJ ultimately finds the fourth factor — employment history — to be neutral, and the first, fifth, and eighth factors — fixed address,

[3] The non-exhaustive factors are: (1) fixed address in the United States; (2) length of residence; (3) family ties and their connection to available immigration relief; (4) employment history; (5) record of appearance in court; (6) criminal record, "including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses;" (7) history of immigration violations; (8) attempts to flee; and (9) manner of entry into the United States. *Guerra*, 24 I&N Dec. at 40.

record of appearance in court, and attempts to flee — to favor Petitioner. (*Id.* at 7.) The remaining factors — length of residence in the United States, family ties, criminal record, history of immigration violations, and matter of entry into the United States — weigh against Petitioner. (*Id.*)

The IJ ends the order by addressing "the unproved criminal allegations" against Petitioner:

> While the [IJ] recognizes that [Petitioner] was accused, but not convicted, of more serious charges, the [IJ] notes that [Petitioner] did not address those allegations during his hearing. In contrast, [Petitioner's] wife testified under oath that Respondent physically and sexually abused her and their child. While counsel frames this as a "he said, she said" situation, there is no "he said". The [IJ] does not intend to shift the burden and recognizes that DHS carries the burden in this case. However, it bears noting that [Petitioner] opted not to testify and dispute, under oath, the sworn allegations made by his wife at the hearing. While the [IJ] recognizes that [Petitioner] presented several character letters as well as the testimony of a former neighbor/friend, none of these individuals possess direct knowledge of whether he abused his wife and/or child. To the extent [Petitioner] would suggest that he has a constitutional right against self-incrimination despite the fact that his criminal proceedings are now concluded, the rules which govern criminal proceedings are not the same as those which govern immigration proceedings. See Gutierrez v. Holder, 662 F.3d 1083, 1091 (9th Cir. 2011) ("[T]here is no prohibition against drawing an adverse inference when a petitioner invokes his Fifth Amendment right against self-incrimination."). Additionally, while [Petitioner's] attorney has expressed her skepticism and disbelief of the allegations, the statements and arguments of counsel are not entitled to evidentiary weight. [citations omitted]

(*Id.* at 7–8.) The IJ continues:

> The [IJ] has also considered the merits of [Petitioner's] asylum claim. The [IJ] must remain mindful not to reach any conclusions before all the testimony and evidence is presented during an individual hearing. However, [Petitioner] may be ineligible for asylum, among other potential reasons, as a matter of discretion based on his previously discussed criminal convictions.

(*Id.* at 8.) Ultimately the IJ concludes:

> The [IJ] has considered the totality of the record and evidence. The [IJ] recognizes and has considered the efforts made by [Petitioner] to establish community ties since his release. However, on balance, the [IJ] finds that DHS has carried their burden and shown by clear and convincing evidence that [Petitioner] poses a danger to the community.

(*Id.* at 8.)

## II. STANDARD OF LAW

Federal courts have inherent authority to enforce their own orders, including those granting injunctive relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). A motion to enforce judgment is the "usual method" for requesting a court interpret its own judgment and compel compliance. *California by & through Becerra v. Dep't of the Interior*, No. C 17-5948 SBA, 2020 WL 13093994, at *3 (N.D. Cal. July 30, 2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)).

To prevail on a motion to enforce an injunction, "[t]he moving party has the burden of showing by clear and convincing evidence that the enjoined party violated a 'specific and definite order of the court.'" *Kia Am., Inc. v. Rally Auto Grp., Inc.*, No. 8:22-CV-00109-JVS-JDE, 2022 WL 17185011, at *2 (C.D. Cal. Oct. 20, 2022) (quoting *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)). If petitioner received all relief required by the court's prior judgment, the motion to enforce should be denied. *Heartland Hosp.*, 328 F. Supp. 2d at 11. But if petitioner demonstrates respondent "has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment," the motion shall be granted. *Id.*

As constitutional challenges to IJ detention determinations present mixed questions of fact and law, the appropriate standard of review is "abuse of discretion." *Martinez v. Clark*, 124 F.4th 775, 783–84 (9th Cir. 2024). Under an abuse of discretion standard, the court does not reweigh evidence but instead considers whether the IJ "applied the correct legal standard." *Id.* (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence. Instead, its review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-CV-08118-LB, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020)).

## III. ANALYSIS

Petitioner argues that the IJ's decision was constitutionally insufficient to support a

finding that Petitioner poses a danger to the community. (ECF No. 23 at 11–15.) Petitioner describes several analytical deficiencies in the IJ's decision including making a conclusory finding of dangerousness without reasoning, conflating flight risk factors with dangerousness, relying on unproven charges instead of convictions, shifting the burden of proof by drawing adverse inferences against him, and prejudging the merits of his asylum claim.[4] (*Id.*) In opposition, Respondents assert the pre-deprivation hearing complied with the Court's order and constitutional requirements.[5] (ECF No. 28 at 7–9.) The Court begins with examining whether the record was sufficient to support the IJ's findings before turning to the IJ's reasoning. The Court finds the IJ abused their discretion on both counts.

A. <u>The IJ's Findings Were Unsupported by the Record as a Matter of Law</u>

An IJ abuses their discretion when the record of evidence is legally insufficient to satisfy the standard of proof. *See*, *e.g.*, *Y.S.G. v. Andrews*, No. 2:25-CV-1884-SCR, 2025 WL 2979309, at *10 (E.D. Cal. Oct. 22, 2025) (finding abuse of discretion because evidentiary record could not support a finding of danger). The clear and convincing standard is an intermediate burden of proof that "requires 'an abiding conviction that the truth of [the] factual contentions' at issue is 'highly probable.'" *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (en banc) (citing *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984)).

"To determine whether a[ ] [noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez*, 124 F.4th at 784 (citing *Guerra*, 24 I.

---

[4] Petitioner also argues the IJ did not act as a neutral factfinder and refused to consider alternatives to detention. (ECF No. 23 at 15–25.) As the Court finds relief is warranted based on the IJ's evidentiary and analytical deficiencies, the Court need not address Petitioner's alternative arguments.

[5] Respondents also argue Petitioner failed to exhaust administrative remedies. (ECF No. 28 at 6.) Upon consideration of the factors articulated in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), the Court finds prudential exhaustion is not required here. The matter before the Court is whether Respondents complied with this Court's prior order. An administrative record is not necessary to answer this question, waiver will not encourage bypass of the administrative scheme, and the Court is unconvinced that the agency will correct its own mistake. *See Gurpreet S. v. Warden Golden State Annex Det. Facility*, No. 1:26-CV-00437-TLN-JDP, 2026 WL 1678332, at *3 (E.D. Cal. June 10, 2026) (setting forth this Court's reasoning). Delaying vindication of Petitioner's constitutional rights will cause further irreparable harm.

& N. Dec. at 40).[6] However, "[t]he *Guerra* factor most pertinent to assessing dangerousness directs [IJs] to consider 'the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses.'" *Singh v. Holder*, 638 F.3d 1196, 1206 (9th Cir. 2011) *abrogated on other grounds* (citing *Guerra*, 24 I. & N. Dec. at 40). And while "a[ ] [noncitizen's] criminal record is surely relevant to a bond assessment, *Guerra* contemplates that criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses *must* be considered." *Id.* (emphasis added).

Here, the evidentiary record before the IJ was legally insufficient to find the government had proven by clear and convincing evidence that Petitioner is a danger to the community. The government's only evidence related to danger was Petitioner's conviction for dissuading a witness. (ECF No. 23-1 at 6–7.) With respect to recency, it is unclear from the record when the conduct occurred, however Petitioner was arrested in August of 2022. (*Id.* at 7.) After spending over three years in pre-trial detention, Petitioner was ultimately sentenced to 120 days in jail with credit for time served, three years of probation, and a ten-year protective order for his ex-wife and child. (*Id.*) The government provided no evidence, and there is nothing on the record to indicate Petitioner engaged in any criminal activity following his 2022 arrest, either while he remained in custody or after his release upon completing his sentence.

In terms of severity, the government acknowledged Petitioner's criminal conviction did not rise to the level of an aggravated felony. (ECF No. 23-1 at 76.) However, the government argued the "underlying facts surrounding the dissuading a witness" — specifically, the ex-wife's allegations that Petitioner committed domestic abuse — supported a dangerousness finding. (*Id.*) While "'evidence of unfavorable conduct, including criminal conduct which has not culminated in a final conviction . . . , may be considered[,]' . . . [t]he evidence is weighed according to its strength and the facts and circumstances of the case." *Vera-Perez v. Garland*, No. 20-73247, 2022 WL 883742, at *1 (9th Cir. Mar. 24, 2022) (citing *Matter of Thomas*, 21 I&N Dec. 20, 23–

[6] *See*, *supra* note 3 (listing the *Guerra* factors).

24 (BIA 1995)). A significant amount of Petitioner's pre-deprivation hearing concerned the reliability of his ex-wife's testimony, the veracity of her allegations, and her motive. (*See* ECF No. 23-1 at 12–25, 30–60, 62–65, 68–73.) The government did not rely on her testimony as evidence (*see id.* at 75–76), nor was it discussed in the IJ's order (*see id.* at 5–8). Petitioner was never found to have committed the acts he was accused of and according to his public defender, the charges from those allegations were dropped "after extensive defense investigation and negotiations that significantly undermined the prosecution's case[.]" (*Id.* at 188–189.) This included Petitioner voluntarily submitting to a polygraph examination and passing, an evaluation by a *Stoll* expert who concluded he did not exhibit any propensity for the behaviors alleged, and the prosecution's awareness that the alleged child victim had been coached by her mother. (*Id.* at 189.) His public defender states, "[i]n my professional opinion, based on 21.5 years of criminal defense experience handling serious felony and life-exposure sex and homicide cases, this resolution is a strong indicator that the prosecution did not believe it could sustain the original charges at trial." (*Id.* at 190.) In light of these surrounding facts and circumstances, the unproven allegations made against Petitioner by his ex-wife do not lend support for finding his criminal record comprises a severe offense.

Considering the totality of the record before the IJ, even under a deferential standard, there is insufficient support as a matter of law for the IJ to find it "highly probably" that Petitioner is a present danger to the community. *See Mondaca-Vega*, 808 F.3d 413 at 422. The allegations against Petitioner and his prior criminal conviction — for which he was arrested four years ago, sentenced, completed his term of imprisonment, and was released on parole with conditions — cannot support a finding of present danger.[7] As the Ninth Circuit warned in *Singh*: "[A]

---

[7] Although the IJ found Petitioner's length of residence, family ties in the United States, immigration violations, and manner of entry also "balance[d] against [him]," it is unclear whether these factors were offered or considered as evidence of danger or of flight risk. (ECF No. 23-1 at 7, 75–77 (arguing Petitioner is both a danger and flight risk).) In any event, even accepting the IJ's conclusion that these factors balance against Petitioner, they are insufficient to support a finding that he is a present danger. As the Ninth Circuit explained, the *Guerra* factor "most pertinent to assessing dangerousness" is a noncitizen's criminal record. *Singh*, 638 F.3d at 1206. The Court is unable to discern how these four factors could be viewed as evidence that Petitioner is a present danger.

conviction could have occurred years ago, and the [noncitizen] could well have led an entirely law-abiding life since then. In such cases, denial of bond on the basis of criminal history alone may not be warranted." 638 F.3d at 1206. This is the precise circumstance here.

Upon review of the record, the Court finds insufficient evidence to support the IJ's finding that the government had proven by clear and convincing evidence that Petitioner is a danger to the community as a matter of law. The IJ therefore abused their discretion.

### B. <u>The IJ Failed to Adequately Explain the Dangerousness Finding</u>

When an IJ's decision is "arbitrary, irrational, or contrary to law," it is an abuse of discretion. *Bonilla v. Lynch*, 840 F.3d 575, 581 (9th Cir. 2016) (quoting *Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011)). An IJ abuses their discretion when they fail to explain the reasoning for their findings. *See Hernandez Arechiga v. Bowen*, No. 26-CV-1516, 2026 WL 1500398, at *4 (C.D. Cal. May 26, 2026) (finding abuse of discretion where IJ denied bond based on conclusory findings without explanation and collecting cases finding similarly); *see also Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005) (citing *Yepes–Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir. 1993) ("Immigration judges, although given significant discretion, cannot reach their decisions capriciously and must indicate how they weighed the factors involved and how they arrived at their conclusion.") (cleaned up); *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023) (citing *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007) (IJs must give "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[] its reasoning").

"Meaningful evaluation of mitigation evidence relevant to danger is necessary to ensure that the high burden of the clear and convincing standard is demonstrated in fact, not in theory." *Y.S.G.*, 2025 WL 2979309, at *10 (cleaned up) (citing *Obregon v. Sessions*, No. 17-CV-01463, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017)); *Singh v. LaRose*, No. 26-CV-1425, 2026 WL 1387428, at *6 (S.D. Cal. May 18, 2026) (finding IJ abused their discretion by failing to consider highly probative evidence); *cf. Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011) (holding in a different immigration context that "where potentially dispositive testimony and documentary evidence is submitted, the BIA must give reasoned consideration to that evidence").

Here, the Court finds it was clear legal error for the IJ to issue a conclusory finding of dangerousness without explaining what evidence constitutes clear and convincing proof of dangerousness. The IJ only cites generally to "the totality of the record and evidence." (ECF No. 23-1 at 8.) Although the IJ's order contains discussion of the *Guerra* factors, it is unclear how consideration of these factors ultimately led the IJ to conclude Petitioner poses a danger to the community. For example, the IJ "finds that [Petitioner], on two occasions, committed the crime of dissuading a witness," but never analyzes whether or how the conviction evidences present danger. (*Id.* at 7.) The IJ finds Petitioner's length of residence, family ties in the United States, immigration violations, and manner of entry "balance against [Petitioner]," but again does not explain whether or how these factors evidence present danger. (*Id.*) The IJ also considers the merits of Petitioner's asylum claim, and despite the IJ being ultimately incorrect, it is unclear how that consideration factored into the IJ's conclusion. (*Id.* at 8.) Finally, the IJ apparently did not evaluate Petitioner's mitigation evidence. (*Id.* at 8.) Instead, the IJ drew an adverse inference from Petitioner's decision not to testify while excluding his public defender witnesses from testifying and giving no consideration to their declarations. (*Id.* at 7–8, 18–23.)

To be clear, this Court does not reach its finding of abuse of discretion based on a re-weighing of the evidence or second-guessing. Indeed, it could not as the IJ's order does not explain how they arrived at the dangerousness determination or what evidence was considered probative. That is the problem. Without an explanation, reasoning, or citation to evidence to support the finding, the IJ's decision was arbitrary and thus constitutes an abuse of discretion. *See Bonilla*, 840 F.3d at 581.

Because the IJ's abuse of discretion deprived Petitioner of due process, Respondents violated this Court's order that Petitioner receive a constitutionally compliant bond hearing prior to re-detention. Accordingly, Petitioner's motion to enforce judgment is GRANTED.

C. <u>Remedy</u>

Respondents submit that if Petitioner's motion to enforce is granted, the appropriate relief is a new pre-deprivation hearing, not release from detention. (ECF No. 28 at 9–10.) In response, Petitioner argues that ordering another hearing "would reward non-compliance and permit the

government to subject [Petitioner] to indefinite detention while it receives additional opportunities to meet a burden it has already failed to satisfy." (ECF No. 29 at 10.)

"Federal courts have a fair amount of flexibility in fashioning specific habeas relief." *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). As this Court and others have found in similar cases where an IJ failed to provide a constitutionally adequate hearing, the appropriate remedy may be immediate release or a new hearing. *See*, *e.g.*, *Bhim Raj KC v. Chestnut*, No. 1:26-CV-03159-TLN-SCR, 2026 WL 2099279, at *3 (E.D. Cal. July 21, 2026) (ordering release); *Mani Kumar v. Warden*, No. 1:26-CV-00035-KES-CDB, 2026 WL 2078191, at *6 (E.D. Cal. July 17, 2026) (collecting cases ordering release and new bond hearings).

While this is a close call, the Court ultimately finds a new due process hearing, rather than immediate release, is the appropriate remedy here. Despite the errors described above, the Court acknowledges that a two-day pre-deprivation hearing with presentation of argument, witness testimony, and evidence, provided Petitioner with some amount of process. However, repeated failures to comply with the Court's order that Petitioner receive a constitutionally compliant hearing will likely heed a different result. *See*, *e.g.*, *Bhim Raj KC v. Chestnut*, No. 1:26-CV-03159-TLN-SCR, 2026 WL 2099279, at *3 (E.D. Cal. July 21, 2026).

## IV. CONCLUSION

Accordingly, the Court GRANTS Petitioner's Motion to Enforce Judgment (ECF No. 23). IT IS HEREBY ORDERED that:

1. Respondents are ENJOINED and RESTRAINED from continuing to detain Petitioner H.F. for more than **seven (7) days** from the date of this Order without a hearing before a neutral factfinder at which Respondents bear the burden to demonstrate by clear and convincing evidence that the government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. The factfinder must consider Petitioner's financial circumstances for bond and alternative conditions of release. At any such hearing, Petitioner shall be allowed to have counsel present. If Petitioner is not found to be a danger to society or a flight risk, Respondents must immediately release

Petitioner. Respondents may impose any restrictions or conditions determined to be necessary by the factfinder at the hearing.

2. Within **three (3) days** from the date of the hearing, Respondents are ORDERED to file a status report confirming that the hearing occurred, the date of the hearing, and the outcome of the hearing.

3. If Petitioner is released, Respondents are further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government bears the burden to show by clear and convincing evidence that material changed circumstances demonstrate: (a) a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) the government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. At any such hearing, Petitioner shall be allowed to have counsel present.

4. Petitioner's Motion for TRO (ECF No. 24) is DENIED as moot.

IT IS SO ORDERED.

DATE: July 30, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE